Prepared By:
PennyMac Loan Services, LLC
6101 Condor Drive, Suite 200
Moorpark, CA  93021
866-549-3583

After Recording Please Return To:
ServiceLink
Attn: Loan Modification Solutions
3220 El Camino Real
Irvine, CA  92602

Property Address:
361 LENAPE TRAIL
ALLENTOWN, PA  18104

UPI/PIN/Tax ID ███████

———————————————————— *[Space Above This Line For Recording Data]* ————————————————

LOAN NO.: ███████

Investor Case N ███████

Investor Loan N ███████

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **8th** day of **March, 2022**, between **CHRISTOPHER C. JONES AND NADEGE JONES** ("Borrower"), **PennyMac Loan Services, LLC** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **January 11, 2019** and in the amount of **$321,077.00** and recorded on **January 14, 2019** in Book, Volume, or Liber No.           , at Page           (or as Instrument No. **2019001307**) , of the **Official** Records of **LEHIGH,PENNSYLVANIA** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:
**361 LENAPE TRAIL, ALLENTOWN, PA 18104**
[Property Address]

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
Page 1 of 10

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **May 1, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$278,830.62**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.875%**, from **April 1, 2022**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,311.16**, beginning on the **1st** day of **May, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **3.875%** will remain in effect until principal and interest are paid in full. If on **April 1, 2052** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and the Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is

obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

    a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e) Borrower agrees that they will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided for signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

                By checking this box, Borrower also consents to being contacted by text messaging ☐.

    g)    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

6.    I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing the Loan Modification Agreement, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

7.    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

_____  Date: 3/22/22
Borrower - CHRISTOPHER C. JONES

_____  Date: 3/22/22
Borrower - NADEGE JONES

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
Page 5 of 10

## ACKNOWLEDGMENT

State of  PENNSYLVANIA       §
                             §
County of  LEHIGH            §

On this __22ND__ day of __MARCH__, __2022__, before me, the undersigned officer, personally appeared **CHRISTOPHER C. JONES AND NADEGE JONES**, known to me (or satisfactorily proven), to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

__MARGARET E METZ__
Printed Name

__NOTARY PUBLIC__
Title of Officer

(Seal)                       My Commission Expires: __08-15-2023__

```
Commonwealth of Pennsylvania - Notary Seal
Margaret E. Metz, Notary Public
Lehigh County
My commission expires August 15, 2023
Commission number 1110882
```
Member, Pennsylvania Association of Notaries

---

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
Page 6 of 10

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
PennyMac Loan Services, LLC

_____ (Seal)
                                                              -Lender

By: _____Tabitha Adamson_____
        Assistant Vice President

**SEE ATTACHED**

_____MAR 3 0 2022_____
Date of Lender's Signature

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____Ventura_____)

On __03/30/2022__ before me, __Armon Booth, Notary Public__
(insert name and title of the officer)

personally appeared __Tabitha Adamson__,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ARMON BOOTH
Notary Public - California
Ventura County
Commission # 2374565
My Comm. Expires Sep 11, 2025

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____      §
                             §
County of _____    §

    On _____ before me, _____, Notary Public personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he/she executed the same in his/her authorized capacity on behalf of the corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

_____
Notary Public

_____
Printed Name

(Seal)     My Commission Expires: _____

---

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
Page 8 of 10

## EXHIBIT A

BORROWER(S): CHRISTOPHER C. JONES AND NADEGE JONES

LOAN NUMBER

LEGAL DESCRIPTION:

STATE OF PENNSYLVANIA, COUNTY OF LEHIGH, AND DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN LOT OR PIECE OF GROUND, SITUATE IN THE TOWNSHIP OF UPPER MACUNGIE, COUNTY OF LEHIGH AND COMMONWEALTH OF PENNSYLVANIA, BOUNDED AND DESCRIBED ACCORDING TO A SITE DEVELOPMENT PLAN OF "OLDE TOWNE" AT UPPER MACUNGIE, PREPARED BY MARTIN BRADBURY & GRIFFITH, INC., CONSULTING ENGINEERS, LAND SURVEYORS AND PLANNERS DATE AUGUST 22, 1990 AND LAST REVISED MAY 3, 1995, AND RECORDED IN THE RECORDER OF DEED OF LEHIGH COUNTY AT ALLENTOWN, PENNSYLVANIA, IN VOLUME 33, PAGE 1, AS FOLLOWS, TO WIT: BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF SUSQUEHANNA TRAIL (50 FEET WIDE) SAID POINT BEING LOCATED THE ARC DISTANCE OF 15.71 FEET FROM A POINT OF CURVE CURVING TO THE RIGHT HAVING A RADIUS OF 10.00 FEET ON THE SOUTHEASTERLY SIDE OF LENAPE TRAIL (50 FEET WIDE); THENCE EXTENDING FROM SAID POINT AND PLACE OF BEGINNING AND EXTENDING ALONG THE SOUTHWESTERLY SIDE OF SUSQUEHANNA TRAIL SOUTH 37 DEGREES 38 MINUTES 26 SECONDS EAST AND CROSSING A 15 FEET WIDE DRAINAGE AND UTILITY EASEMENT 115.00 FEET TO A POINT A CORNER IN LINE OF LANDS NOW OR LATE OAKRIDGE MEADOW, INC.; THENCE EXTENDING ALONG THE SAME SOUTH 52 DEGREES 21 MINUTES 34 SECONDS WEST AND CROSSING A 10 FEET WIDE UTILITY EASEMENT 75.00 FEET TO A POINT A CORNER OF LOT NO. 4, BLOCK A; THENCE EXTENDING ALONG THE SAME NORTH 37 DEGREES 38 MINUTES 26 SECONDS WEST A RE-CROSSING THE AFORESAID 15 FEET WIDE DRAINAGE AND UTILITY EASEMENT AND 10 FEET WIDE UTILITY EASEMENT 125.00 FEET TO A POINT A CORNER ON THE SOUTHEASTERLY SIDE OF LENAPE TRAIL;

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
Page 9 of 10

THENCE EXTENDING ALONG THE SAME NORTH 52 DEGREES 21 MINUTES 34 SECONDS EAST 65.00 FEET TO A POINT OF CURVE; THENCE LEAVING THE SAID SOUTHEASTERLY SIDE OF LENAPE TRAIL ON THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 10.00 FEET THE ARC DISTANCE OF 15.71 FEET TO THE POINT AND PLACE OF BEGINNING.

UPI/PIN/Tax I█████████████

ALSO KNOWN AS: 361 LENAPE TRAIL, ALLENTOWN, PA 18104